**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHILIP LYONS ) | 3:05-cv-0400-JCM (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| PATRICIA LEONHARDT, *et al*. ) | |
| Defendants. ) | July 10, 2007 |

This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#55). Plaintiff opposed (#64) and defendants replied (#65). The court has throughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#55) be granted in part and denied in part.

**I. HISTORY & PROCEDURAL BACKGROUND**

Phillip J. Lyons ("plaintiff"), a *pro se* prisoner incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC"), filed his first amended complaint on November 13, 2006 (#53). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment right to petition the government and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 1. Plaintiff names as defendants Patricia Leonhardt, former LCC Director of Nursing; John Scott, LCC senior physician; Theodore D'Amico, former NDOC Medical Director; Jackie Crawford, former NDOC Director; James Cox, NDOC Deputy Director; Lenard Vare, former LCC Warden; and Joseph Ferro, LCC Correctional Sergeant (hereinafter "LCC defendants" unless designated separately);

1 and Ollie Powe,[1] High Desert State Prison ("HDSP") Correctional Lieutenant; Paul Lunkwitz, HDSP Senior Correctional Officer; Santerren Ward, HDSP Correctional Officer; Jay Barth, HDSP Correctional Officer; and John Does 1-4 (hereinafter "HDSP defendants" unless designated separately). *Id.*

Plaintiff's claims arise out of two distinct incidents. Counts I through IV involve events which occurred while plaintiff was housed at LCC. In Count I, plaintiff alleges defendant Leonhardt violated his Eighth Amendment rights by denying him his prednisone medication and not allowing him to see the doctor in a more timely fashion. *Id.* at 20. In Count II, plaintiff alleges defendant Scott violated his Eighth Amendment rights by prematurely stopping plaintiff's prednisone without examining plaintiff. *Id.* at 21. In Count III, plaintiff alleges defendant Ferro violated his Eighth Amendment rights by denying plaintiff's emergency medical grievance. *Id.* at 23. In Count IV, plaintiff alleges defendants D'Amico, Crawford, Cox, and Vare violated his Eighth Amendment rights by establishing a policy which allowed non-medical personnel to review and deny emergency medical grievances. *Id.* at 24.

The events giving rise to Count V occurred while plaintiff was housed at HDSP. In Count V, plaintiff alleges that the HDSP defendants violated his Eighth Amendment rights by using excessive force against him. *Id.* at 27. He alleges mental and emotional injuries as a result of the treatment. *Id.* at 28. Plaintiff also alleges that the HDSP defendants violated his First Amendment right to petition the government by retaliating against him for filing grievances. *Id.* at 27.

**A. The Lovelock Correctional Center Incident**

The following facts are uncontested unless otherwise noted. Plaintiff is currently an inmate at LCC. *Id.* at 1. At the time of the LCC incident, plaintiff was taking a 15mg dose of

---

[1] Plaintiff named Ollie Powe as a defendant in this lawsuit in his first amended complaint because defendant Lunkwitz stated in his response to plaintiff's first request for interrogatories that defendant Powe had "ordered [Lunkwitz] to report to Unit 1AB to calm down a disruptive inmate" (#64-3 at 23).

2

1    prednisone every other day to control sarcoidosis.[2] *Id.* at 5. On December 28, 2004, plaintiff's
2    prednisone prescription expired, and plaintiff was given a thirty-day extension. *Id.* at 6. Plaintiff
3    failed to renew the prescription in January. On January 31, 2005, defendant Leonhardt refused
4    to provide plaintiff with his prednisone because he did not have a current prescription. *Id.*
5    Defendant Leonhardt told plaintiff that he needed to submit a kite to see the doctor, and asked
6    him to return after pill call so that she could help him (#55-2 at 4). Plaintiff did not return after
7    pill call. *Id.* Instead, on February 1, 2005 plaintiff filed an emergency grievance concerning the
8    denial of his prednisone (#53-1 at 9-10). Defendant Ferro denied plaintiff's emergency grievance
9    after defendant Ferro requested and received a DOP-028 form from defendant Leonhardt which
10   stated:

> As I told Mr. Lyons he does not have a current order for the medication. I asked him to give me a kite so I could get him scheduled. Which he did & I have done. Medications need a physician's order before I or any nurse can give them out. He is being scheduled for Thursday [February 3, 2005].

14   (#55-2 at 4). Plaintiff alleges that he attempted to see the doctor on February 2, 2005 and again
15   on February 3, 2005, to no avail (#53-1 at 10-11). The doctor did not see plaintiff on February
16   3, 2005, although the reason for this is unclear from the evidence. Plaintiff alleges that a John
17   Doe nurse told him he did not have an appointment when plaintiff tried to see the doctor on
18   February 3, 2005. *Id.* When plaintiff came to sick call on February 4, 2005, defendant Scott
19   examined him (#64-2 at 24). Plaintiff complained of dizziness and nausea, had an elevated
20   temperature of 102 degrees, and he was given a new prescription for prednisone and a "loading
21   dose of Solumedrol." *Id.* Plaintiff alleges that the shot of Solumedrol was very painful (#53-1
22   at 12). Plaintiff was not admitted to the infirmary (#55-2 at 13).

### B. The High Desert State Prison Incident

24   The following facts are uncontested unless otherwise noted. On March 9, 2005, plaintiff
25   was transported from LCC to HDSP to await a small claims trial in Las Vegas, Nevada (#53-1

---

[2] Sarcoidosis is an immune system disorder characterized by non-caseating granulomas (small inflammatory nodules). The disease can affect any organ in the body, and the cause is unknown.

1  at 13). Upon arrival at HDSP, plaintiff was placed in a cell with another inmate, Marcel
2  McKnight. *Id.* at 14; (#64-4 at 40). Plaintiff submitted an emergency grievance concerning being
3  housed with another inmate without being classified; subsequently, he was contacted over the cell
4  intercom and informed that his grievance was not an emergency (#53-1 at 14). Plaintiff requested
5  a written response to his grievance. *Id.* Thereafter, although the parties dispute exactly how
6  many officers arrived at plaintiff's cell, at least defendants Lunkwitz, Barth and Ward arrived at
7  plaintiff's cell. *Id.* at 15. Plaintiff and his cell-mate contend that six or seven officers came to
8  the cell (#64-2 at 56; #64-3 at 20); however, defendants assert that only three officers came to
9  plaintiff's cell (#64-3 at 23). Defendant Lunkwitz ordered plaintiff to the ground and he and other
10 correctional officers entered the cell and handcuffed plaintiff (#53-1 at 15). Defendants removed
11 plaintiff from his cell and took him to a separate room, where the defendants seated plaintiff in
12 a chair. *Id.* at 16. Plaintiff alleges that defendants Lunkwitz, Barth and Ward "began lambasting
13 and cursing" him for writing the grievance. *Id.* Defendants returned plaintiff to his cell after five
14 or ten minutes. *Id.* Plaintiff alleges that defendant Lunkwitz told him not to submit any more
15 grievances. *Id.* Plaintiff was classified the following day, March 10, 2005. *Id.* at 17. On March,
16 16, 2005, plaintiff returned to LCC and filed a grievance on March 18, 2005 concerning the
17 HDSP correctional officers' actions. *Id.*

18 The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff
19 appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit
20 of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*
21 *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

22                           **II. DISCUSSION & ANALYSIS**
23  **A. Discussion**
24      **1. Summary Judgment Standard**
25 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to
26 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
27 genuine issue as to any material fact and that the moving party is entitled to judgement as a matter
28

of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of an issue of material fact lies with the moving party. *Zoslaw v. MCA Distr. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Yet, "because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when reviewing a grant of summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Blackenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) (internal quotations omitted). If any rational trier of fact could find in favor of the non-moving party, summary judgment must be denied. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "[a] mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Additionally, if the factual context makes the non-moving party's claims implausible, the non-moving party must provide more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587. In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).

### B. Analysis

Defendants contend that as to counts I-IV, no defendant acted with deliberate indifference towards plaintiff's medical needs (#55-1 at 11, 13, and 15). Plaintiff replies by essentially restating his complaint (#64).

### 1. The Lovelock Correctional Center Incident

#### (a) Law

The Eighth Amendment prohibits cruel and unusual punishment and "embodies broad and

5

idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). To succeed on such a claim, an inmate must meet both an objective and subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "serious medical need," or the objective standard, exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). The objective standard requires a showing that the deprivation was serious enough to amount to cruel and unusual punishment. *Id.*

The subjective standard requires a showing that prison officials were "deliberately indifferent" to the inmate's safety. *Id.* "A prison official acts with deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002)). To satisfy this standard, the prison official must not only have known of facts that could give rise to an inference of excessive risk, but also must have drawn the inference. *Id.* This is a question of fact subject to proof in the usual ways, including presentation of circumstantial evidence which demonstrates that a prison official knew of the risk. *Farmer*, 511 U.S. at 842. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

> "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."

*Estelle*, 429 U.S. at 106. A finding that the defendant's activity resulted in "substantial harm" is not necessary; the Eighth Amendment protects deprivations which result "in pain and suffering for no legitimate penological purpose." *Wood v. Housewright*, 900 F.2d 1332, 1340 (9th Cir. 1990)

**(b) Analysis**

**(i) Count I**

Plaintiff alleges that defendant Leonhardt was deliberately indifferent because she refused to refill his prednisone prescription and because she failed to permit plaintiff to see a doctor in a "more timely fashion" (#64-1 at 19).

The court concludes that there is no evidence of a "serious" medical need here. The plaintiff testified that he suffered from dizziness and nausea and had an elevated temperature of 102 degrees (#64-2 at 24). Even taking this as true, these "injuries" do not rise to an Eighth Amendment claim. At the worst, plaintiff suffered from flu-like symptoms for four days, and received an injection that was painful. This is not "chronic and substantial pain." *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Moreover, simply because plaintiff's opinion conflicts with the LCC medical staff does not transform this incident into an Eighth Amendment violation. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

As to the subjective standard, the evidence presented indicates that plaintiff had previously stopped his prednisone medication, on his own, without "apparent problems" (#64-2 at 23).[3] In addition, the evidence indicates that plaintiff had been given a thirty-day extension of his prednisone prescription on December 28, 2004. *Id.* at 23-24. Despite plaintiff's claims that he attempted to see a doctor after his prescription was extended, the only evidence plaintiff submits is his conclusory statement in a kite submitted on January 31, 2005 that he had submitted two previous kites (#64-3 at 31). The evidence also indicates that defendant Leonhardt is a registered nurse, and is therefore unable to prescribe medication (#55-2 at 4). On January 31, 2005, after

---

[3] The pleadings and evidence presented to the court do not detail exactly when plaintiff's voluntary refusal to take his prednisone occurred and neither party has provided the court with plaintiff's medical records.

7

1  plaintiff requested his medication for the day, defendant Leonhardt asked plaintiff to return after
2  pill call to address plaintiff's expired prescription, yet plaintiff did not return. *Id.* Additionally,
3  defendant Leonhardt had plaintiff fill out a kite that day to see a doctor and consulted with Dr.
4  Scott the next morning. *Id.* Dr. Scott informed defendant Leonhardt that "it was sufficient that
5  [he] would subsequently see [plaintiff] regarding his medication." *Id.* Plaintiff was scheduled
6  for an appointment, and saw the doctor a couple of days later. *Id.* When viewed in the light most
7  favorable to the plaintiff, these facts establish, at most, negligence on the part of defendant
8  Leonhardt for not immediately seeking a physician's order to refill plaintiff's prednisone
9  medication.

10  The Ninth Circuit has considered at least one case with more egregious facts and found
11  no deliberate indifference. In *Toguchi*, the court considered whether the treatment Keane Toguchi
12  received while an inmate at Halawa Correctional Facility demonstrated deliberate indifference.
13  *Toguchi*, 391 F.3d at 1054. The court concluded that "[if] Dr. Chung had assessed Keane and
14  determined that he was suffering from withdrawal and, in the face of that knowledge,
15  administered drugs *that she knew to be life-threatening* her conduct *might then* meet the deliberate
16  indifference standard." *Id.* at 1059 (emphasis added). In the instant case, no evidence presented
17  demonstrates that defendant Leonhardt knew that denying plaintiff his prednisone could be life-
18  threatening.

19  The evidence fails to reveal a genuine issue of material fact as to whether defendant
20  Leonhardt withheld plaintiff's prednisone or failed to allow him to immediately see a doctor with
21  knowledge that it would cause plaintiff serious harm. The defendants' motion for summary
22  judgment is granted as to defendant Leonhardt.

23  **(ii) Count II**

24  Plaintiff next alleges that defendant Scott violated his Eighth Amendment rights by
25  prematurely stopping plaintiff's prednisone medication without examining him (#53-1 at 21).
26  The court concluded above that plaintiff's medical need was not "serious" enough to constitute
27  an Eighth Amendment violation. The court also concludes that there is no evidence that
28  defendant Scott acted with deliberate indifference.

8

1    The evidence establishes that plaintiff had been given a one-month extension of his
2 prescription on December 28, 2004 (#64-2 at 23). Because plaintiff was unable to obtain his
3 prescription on January 31, 2005, it appears plaintiff did not see a doctor to have the prescription
4 renewed before defendant Leonhardt refused to provide plaintiff his prednisone for that day. As
5 noted above, the only evidence that plaintiff attempted to renew the prescription after the one-
6 month extension on December 28, 2004, is plaintiff's conclusory statement that he submitted two
7 kites to see the doctor before January 31, 2005. Plaintiff also appears to claim that defendant
8 Scott had a duty to make sure plaintiff's prescription did not run out. The court knows of no such
9 duty – even outside the prison setting, patients are responsible for their own medical care and
10 procuring prescription refills. Moreover, defendant Leonhardt stated in her declaration that
11 defendant Scott felt it was okay if plaintiff saw him in the next few days after he was informed
12 that plaintiff needed a refill of his prednisone (#55-2 at 4). The undisputed evidence also reveals
13 that plaintiff had previously stopped taking prednisone with no adverse consequences (#64-2 at
14 23).

15    There is no evidence to indicate to the court that defendant Scott had reason to believe that
16 plaintiff would suffer harm, let alone significant harm, from a lack of prednisone. Since
17 defendant Scott did not act with deliberate indifference, the court grants defendants' motion for
18 summary judgment as to defendant Scott.

### (iii) Count III

20    Plaintiff alleges that defendant Ferro violated his Eighth Amendment right against cruel
21 and unusual punishment by "rejecting and denying plaintiff's emergency grievance alerting prison
22 officials that [plaintiff's] health and life were being endangered by the LCC medical personnel's
23 abrupt stoppage of plaintiff's prednisone medication" (#53-1 at 23).

24    A review of the evidence reveals that defendant Ferro obtained a DOP-028 form from
25 defendant Leonhardt (#55-2 at 4). This form, completed by defendant Leonhardt, stated that she
26 informed plaintiff that she could not fill his prescription because it had expired and that plaintiff
27 had been scheduled to see the doctor. *Id.* It also stated that medications can only be dispensed
28 pursuant to a physician's order. *Id.* Defendant Ferro denied plaintiff's emergency grievance

1  based on the statement of defendant Leonhardt that plaintiff was scheduled to see the doctor and
2  that she could not provide him with medication because plaintiff had no current prescription on
3  file.
4        Given these facts, the court concludes that there is no genuine issue of material fact as to
5  whether defendant Ferro was aware of any risk of serious harm to plaintiff by denying the
6  grievance. Defendant Ferro relied on the medical advice from a prison medical official to deny
7  plaintiff's emergency grievance. The defendants' motion for summary judgment is granted as to
8  defendant Ferro.

9        **(iv) Count IV**

10        Plaintiff alleges that defendants D'Amico, Crawford, Cox and Vare violated plaintiff's
11  Eighth Amendment rights by creating a policy which allowed non-medical personnel to review
12  and deny emergency medical grievances (#53 at 25). Defendants respond that they cannot be held
13  vicariously liable for the acts of defendant Ferro (#55-1 at 10).
14        Despite defendants' argument, this is not a vicarious liability claim. The court construes
15  plaintiff's claim as alleging an affirmative violation of his Eighth Amendment rights by
16  defendants D'Amico, Crawford, Cox and Vare through the establishment of a policy which they
17  knew or should have known would lead to Eighth Amendment violations.
18        A person deprives another of a constitutional right for the purposes of section 1983 if that
19  person "does an affirmative act, participates in another's affirmative acts, or omits to perform an
20  act which that person is legally required to do that causes the deprivation of which complaint is
21  made." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) *quoting Johnson v. Duffy*, 588 F.2d
22  740, 743 (9th Cir. 1978). Section 1983 allows suits based on governmental customs, even if those
23  customs are not explicit. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (stating
24  that every section 1983 person "... may be sued for constitutional deprivations visited pursuant
25  to governmental 'custom' even though such a custom has not received formal approval through
26  the body's official decision making channels.") There must be a causal connection by some kind
27  of direct personal participation in the deprivation or by setting in motion a series of acts by others
28  which the actor knows or reasonably should know would cause others to inflict the constitutional

1  injury. *Hydrick*, 466 F.3d at 689.

2  Therefore, the dispositive question is whether there is a genuine issue of material fact as to whether defendants D'Amico, Crawford, Cox and Vare knew or should have known that the policy would cause an Eighth Amendment violation. As the moving party, defendants carry the burden of showing that there is no genuine issue of material fact concerning whether they acted with deliberate indifference in establishing the medical emergency grievance review policy. *See Zoslaw*, 693 F.2d at 883. Because defendants did not address plaintiff's claim as the court construes it, they have presented no evidence on the creation of the medical emergency review policy. Therefore, the court is unable to grant summary judgment in favor of the defendants on Count IV.

**2. The High Desert State Prison Incident (Count V)**

Plaintiff alleges that the HDSP defendants violated his Eighth Amendment rights by using excessive force, and that he suffered mental and emotional injuries as a result of the treatment (#53-1 at 27-28). Plaintiff also alleges that the HDSP defendants violated his First Amendment right to petition the government by retaliating against him for filing grievances. *Id.* Defendants argue that plaintiff's Eighth Amendment claim cannot succeed, because he suffered only a *de minimus* injury (#55-1 at 17). Defendants also contend that plaintiff's First Amendment claim fails because he cannot show absence of legitimate penological goals in the HDSP defendants' alleged retaliatory actions. *Id.* at 25.

**(a) Law**

Where an inmate is claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. When reviewing use of force, the court considers the extent of the injury suffered by the inmate, "the need for application of force, the relationship between that need and the amount of force used,

1    the threat reasonably perceived by the responsible officials, and 'any efforts made to temper the
2    severity of a forceful response.'" *Id. quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986). The
3    amount of force used must be more than *de minimus*; however, there is no requirement as to the
4    extent of injury suffered to make out an Eighth Amendment claim. *See* Oliver *v. Keller*, 289 F.3d
5    623, 628 (9th Cir. 2002) (criticizing the fifth circuit's interpretation of *Hudson* as requiring more
6    than a *de minimus* injury). Additionally, the court must give deference to the prison officials
7    when reviewing use of force and cannot substitute its own judgment for the judgment of prison
8    officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of
9    wantonness, the case should not go to the jury. *Id.*

                              **(b) Analysis**

                           **(i) Excessive Force**

12   Plaintiff testified in his deposition that he saw six or seven guards entering the cell block
13   through the open food slot of his cell (#64-2 at 39). Plaintiff's cellmate, Mr. McKnight,
14   corroborated the number of guards in his affidavit (#64-3 at 20). Plaintiff testified that defendant
15   Lunkwitz ordered plaintiff to the floor and that knees were placed on plaintiff, after which he was
16   roughly handcuffed. *Id.* Plaintiff further testified that the handcuffs were as tight as they could
17   get. *Id.* at 37. Plaintiff testified that he was yanked to his feet and taken to a different room,
18   where he was roughly sat in a chair causing him pain in his pelvis. *Id.* at 6, 20. Finally, plaintiff
19   testified that he lost circulation in his hands and had to "work" them to return feeling, and that
20   the handcuffs left indentations in his wrists, but not bruises. *Id.* at 4-5.

21   In response to plaintiff's interrogatory, defendant Lunkwitz stated that the food flap of
22   plaintiff's cell was not working. *Id.* at 23. Defendant Lunkwitz also stated that plaintiff was
23   rolled to a sitting position before being raised to his feet. *Id.* at 24.

24   Even viewing these facts in the light most favorable to the plaintiff, the court concludes
25   that the evidence does not demonstrate that the force used was excessive. In his declaration,
26   defendant Powe stated that if the food flap of a cell is not working, correctional officers employ
27   other security measures when handcuffing inmates; for example, officers will have the inmate
28   move to the back of the cell and lie face down on the floor to await being handcuffed (#55-2 at

1  7). This is the procedure the officers used on plaintiff (#64-2 at 36). Moreover, forcing someone
2  to walk quickly and sitting someone in a chair roughly is not excessive force. There also is no
3  evidence of any injury to plaintiff. Further, it is prison policy that whenever an inmate files a
4  grievance complaining about a cell-mate, that inmate is removed from the presence of his cell-
5  mate and questioned about the grievance (#55-2 at 7).

6  Because the evidence presented to the court indicates that defendants had a legitimate
7  reason to remove plaintiff from his cell and did not inflict any serious or even lasting injury on
8  plaintiff, the court cannot find the evidence susceptible to a reliable inference of wantonness.
9  Summary judgment is granted as to plaintiff's excessive force claim.

10 **(ii) Mental or Emotional Injury**

11  Defendants argue that because plaintiff has not suffered a physical injury that is more than
12  *de minimus* he is precluded from seeking damages for a mental or emotional injury under 42
13  U.S.C. § 1997e(e) (#55-1 at 22).

14  42 U.S.C. § 1997e(e) states, "[n]o federal civil action may be brought by a prisoner
15  confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered
16  while in custody without a prior showing of physical injury." The Ninth Circuit has held that "for
17  all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury
18  that need not be significant but must be more than *de minimus*." *Oliver*, 289 F.3d at 627.

19  As alleged by plaintiff, he suffered only loss of circulation in his hands, a brief pain in his
20  shoulder and pain in his pelvis, which lasted for three days (#64-3 at 4-6, 20). These are *de*
21  *minimus* injuries. *See*, *e.g.*, *Oliver*, 289 F.3d at 626 (relating with approval the facts of *Siglar v.*
22  *Hightower*, 112 F.3d 191 (5th Cir. 1997) (holding that a bruised ear, which lasted for three days
23  was a *de minimus* injury)). Because plaintiff has suffered only *de minimus* physical injuries, he
24  cannot recover for mental or emotional injury. The defendants' motion for summary judgment
25  is granted as to plaintiff's mental or emotional injury claim.

26 **(iii) Retaliation**

27  Plaintiff alleges defendants retaliated against him for filing the emergency grievance
28  concerning being housed with another inmate without being classified at HDSP (#53-1 at 29).

1   Defendants argue that there was no excessive force used, so plaintiff suffered no adverse action,
2   and that plaintiff cannot prove the absence of legitimate correctional goals (#55-1 at 24-25).

3        The Ninth Circuit has held that "a prisoner suing prison officials under section 1983 for
4   retaliation must allege that he was retaliated against for exercising his constitutional rights and
5   that the retaliatory action does not advance legitimate penological goals...." *Barnet v. Centori*,
6   31 F.3d 813, 815-16 (9th Cir. 1994). A prisoner alleging retaliation "bears the burden of pleading
7   and proving the absence of legitimate correctional goals for the conduct of which he complains."
8   *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

9        In the instant case, plaintiff's emergency grievance indicated that he was concerned about
10  being housed with Mr. McKnight (#53-2 at 11). Plaintiff admits that defendants were required
11  to respond to his emergency grievance (#53 at 14). Defendant Powe indicated in his declaration
12  that whenever an inmate expresses "a possible issue with a cellmate," the prison responds by
13  removing the inmate from the cell and questioning him about his cell-mate (#55-2 at 7). When
14  plaintiff filed an emergency grievance concerning being housed with Mr. McKnight, prison
15  officials had a legitimate need to remove plaintiff from the cell in order to assure no altercation
16  had occurred between plaintiff and Mr. McKnight. Prison altercations endanger the lives of not
17  only the inmates involved in the fight, but also the prison officials who are required to breakup
18  the altercation. Therefore, removing plaintiff from the cell was based on the legitimate
19  penological goal of maintaining prisoner and correctional officer safety. Plaintiff has not
20  presented any evidence showing that the actions of the HDSP defendants–removing plaintiff from
21  his cell and escorting him to another room–had no legitimate penological goals. Plaintiff simply
22  asserts in his amended complaint that he was removed from his cell with excessive force and was
23  verbally "tortured" in retaliation for writing grievances (#53-1 at 27). Not only does the court
24  conclude above that there was no use of excessive force, but plaintiff's conclusory allegations
25  cannot prevent summary judgment. Summary judgment is granted as to the HDSP defendants
26  on plaintiff's retaliation claim.
27  ///
28  ///

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes as follows:

- Defendant Leonhardt did not act with deliberate indifference in denying plaintiff his prednisone medication and not allowing plaintiff to immediately see a doctor concerning his prescription, because she was unaware of facts suggesting that plaintiff was in any serious danger if not provided the medication;

- Defendant Scott did not act with deliberate indifference, because defendant Scott was unaware of facts suggesting that plaintiff was in any serious danger if not provided prednisone;

- Defendant Ferro did not act with deliberate indifference because the unrefuted evidence indicates that defendant Ferro consulted a prison medical official before denying plaintiff's grievance and because there is no evidence that defendant Ferro was aware of facts suggesting that plaintiff was in any serious danger if plaintiff's grievance was denied;

- Plaintiff's claim against defendants D'Amico, Crawford, Cox and Vare for violation of plaintiff's Eighth Amendment rights through creation of a policy which allows non-medical personnel to reject an emergency medical grievance after consulting with medical personnel cannot be resolved by summary judgment because defendants presented no evidence to dispute plaintiff's claim;

- Defendants Lunkwitz, Barth, Ward, and John Does 1-4 did not use excessive force against plaintiff on March 9, 2005, because the evidence indicates that plaintiff suffered only a *de minimus* injury, and the defendants' use of force does not offend the "conscience of mankind;"

- Plaintiff's mental or emotional injury claim cannot survive summary judgment because plaintiff suffered only a *de minimus* physical injury;

- Plaintiff's retaliation claim cannot survive summary judgment because the evidence establishes that the HDSP defendants legitimately acted to preserve the safety of plaintiff, plaintiff's cell-mate, and prison officials when they removed plaintiff from his cell.

The court recommends that defendants' motion to dismiss (#55) be **GRANTED** as to Counts I, II, III, and V, and **DENIED** as to Count IV.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal

pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#55) be **GRANTED** as to Counts I, II, III, and V, and **DENIED** as to Count IV.

**DATED:** July 10, 2007.

*/s/ Valerie P. Cooke*

**UNITED STATES MAGISTRATE JUDGE**